IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES CHATMAN,<br>B24332,<br><br>              **Plaintiff,**<br><br>vs.<br><br>DOCTOR WYNN,<br>DR. DeBORD,<br>WEXFORD HEALTH SOURCES, INC.,<br><br>              **Defendants.** | )<br>)<br>)<br>)<br>)<br>)   Case No. 23-cv-3465-DWD<br>)<br>)<br>)<br>)<br>)<br>) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

    Plaintiff James Chatman, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the Defendants have violated his rights by continuing to administer him a medication that caused severe side effects, and by failing to implement changes to his medication after he reported issues. He seeks monetary compensation and injunctive relief.

    Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law

is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Sometime in February of 2022, Plaintiff experienced kidney failure while housed at Pinckneyville. (Doc. 1 at 11). He was transferred to a hospital in Carbondale, Illinois, for treatment. He remained at the hospital for seven days, during which time he continuously lost consciousness. At the hospital he also suffered brain swelling, kidney failure, and memory loss. Plaintiff believes that this medical episode was caused by medication that Defendant Dr. Wynn had prescribed him.

Prior to his hospitalization, Plaintiff alleges that he complained to Dr. Wynn of several different side effects from Amantadine (Symmetral) and Cogentin that were being used to treat Tardive Dyskinesia, and he had asked to be removed from the medications. Dr. Wynn refused, and Plaintiff continued to take the medications as ordered. Plaintiff alleges that Dr. Wynn never informed him of side effects related to the Amantadine, and that Wexford distributed the medication in a white sleeved envelope that did not display side effect information. (Doc. 1 at 12). Plaintiff alleges that Dr. Wynn had a duty to treat him, and despite his complaints, he did not discontinue the medication.

Plaintiff alleges that the medication was continued due to a "custom, practice and policy of Wexford and its affiliates of cost cutting." (Doc. 1 at 12). Plaintiff claims that he asked to be sent to a specialist for treatment because his medications were not working. However, Wexford approves or condones policies and practices that prevent specialist

visits to further the objective of cutting costs.  He further alleges that Wexford promotes policies and practices that prevent warnings about side effects, which can lead to severe injuries.  (Doc. 1 at 13).  He claims that cost-cutting policies require medications to be given to an inmate before he can be seen by a specialist.  (Doc. 1 at 14).  He further claims that these policies about medication administration and cost cutting led to his kidney failure, brain swelling, and amnesia.  (*Id.*).

Plaintiff alleges that when he was taken to the healthcare unit in extreme pain before his hospitalization, Dr. DeBord (or nurse practitioner) advocated that he should be taken to the hospital.  (Doc. 1 at 11).  He claims DeBord saved his life, and explained to him that the medical he had been prescribed was not meant to treat Tardive Dyskinesia.  (Doc. 1 at 12).  He alleges that DeBord properly treated him and is only sued in her official capacity.

Plaintiff also alleges that at the hospital he was told that Amantadine and Cogentin were the cause of his sudden illness.  (Doc. 1 at 12).

Plaintiff alleges that his claims arise under the Eighth Amendment via theories of deliberate indifference and cruel and unusual punishment.  (Doc. 1 at 14).  He also presents state law claims for intentional infliction of emotional distress (Wexford and Dr. Wynn) and negligence (Dr. Wynn only).  (Doc. 1 at 15).  Plaintiff seeks monetary compensation, and injunctive relief in the form of surgical treatment for his Tardive Dyskinesia.

Based on the allegations in the Complaint, the Court will designate the following claims:

> Count 1:   Eighth Amendment deliberate indifference claim against Defendant Dr. Wynn for his continued use of Amantadine and Cogentin after Plaintiff complained of ill-effects;
>
> Count 2:   *Monell* claim against Wexford Health Sources, Inc. for maintaining a cost cutting policy that required the use of medications over specialist visits, and for a policy of failing to disclose side effects of medications;
>
> Count 3:   Intentional Infliction of Emotional Distress claim against Dr. Wynn and Wexford Health Sources, Inc. for knowingly proceeding with a harmful course of care;
>
> Count 4:   Negligence claim against Dr. Wynn for his treatment decisions.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## Preliminary Dismissals

Plaintiff asserts that DeBord saved his life, and that she is sued only in her official capacity. It is not clear why Plaintiff believes that he needs to include DeBord in official capacity if DeBord did not participate in any of the conduct that harmed him. The official/individual capacity language refers to the capacity in which a party is named as a defendant. *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (stating that the terms "official capacity" and "individual capacity" refer to the capacity in which a party is sued, not the capacity in which he inflicts the alleged injury). "Naming a state actor in his individual, or

personal, capacity is the appropriate method for seeking to hold that individual personally liable for his (alleged) wrongdoing; naming a state actor in his official capacity, on the other hand, is merely another way of naming the entity for which he works as a defendant in the case." *Suarez v. Ill. Valley Cmty. Coll.*, 688 F. Supp. 376, 379 (N.D. Ill. 1988). Thus, in an official capacity suit brought pursuant to Section 1983, the real party in interest is the entity that employs the defendant. *Richman v. Sheahan*, 270 F.3d 430, 439 (7th Cir. 2001) (stating that a Section 1983 claim against a public official in his "official capacity" is a suit against the entity of which that official is an agent).

Plaintiff clearly alleges that DeBord has no liability for personal actions, which rules out an individual capacity claim. However, Plaintiff still indicates DeBord should remain in official capacity. Plaintiff also lists DeBord as an employee of Wexford. (Doc. 1 at 4). Thus, an official capacity claim against DeBord would mean a claim against Wexford. As explained below, the Court is already allowing Plaintiff to proceed against Wexford, so there is no need to maintain DeBord as a defendant to pursue any claim against Wexford and DeBord will be dismissed without prejudice.

## Analysis

### Claim 1

Plaintiff alleges that Dr. Wynn continued him on two medications even after he inquired about and reported adverse side effects. He further claims that because of the medications he suffered kidney failure, brain swelling, and memory loss that required a week-long hospitalization. He suggests that he should have been sent out to see a specialist instead of being continued on a medication that was harmful to his health.

While inmates are not entitled to demand a specific course of care, it is possible that Plaintiff could make out a deliberate indifference claim related to the continued use of a medication that was causing serious ill-effects. At this early juncture, Plaintiff will be allowed to proceed on Claim 1 against Dr. Wynn.

Plaintiff also mentioned cruel and unusual punishment, but any such claim would be duplicative of the deliberate indifference claim, so this theory is dismissed without prejudice.

**Claim 2**

Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021).

Here, Plaintiff has identified at least two discrete alleged policies. He first alleges that Wexford violated his rights by maintaining a cost-saving policy that prioritized and mandated the use of medications before an inmate could be given a referral to an outside specialist. Plaintiff alleges this policy or practice impacted him and caused his injury because Dr. Wynn acted pursuant this policy or practice when he continued Plaintiff's

medications and refused alternative treatment options. Second, Plaintiff alleges that Wexford has a policy or practice of restricting access to information about side-effects, which in turn poses a risk of serious medical harm. He ties this alleged policy or practice to his own experience by alleging that his medications were dispensed to him in white envelopes that did not display side effect warnings, and that when hospitalized for kidney failure and brain swelling, he learned that medical providers believed his health problems were caused by his medications. At this early juncture, both alleged policies or practices are sufficiently described to proceed beyond judicial review. *Monell* claims are difficult to prove and will require significantly more information than what is initially alleged, but at this early juncture Plaintiff's allegations are construed broadly in his favor.

### Claims 3 and 4

Plaintiff has alleged that the conduct described in the complaint also rises to the level of the intentional infliction of emotional distress by Dr. Wynn and Wexford. He further alleges Dr. Wynn's actions were negligent. At this preliminary juncture, both state law claims will be allowed to proceed.

### Motion for Recruitment of Counsel

Plaintiff has moved for recruited counsel (Doc. 3) on the premise that he has only some high school education, he has Tardive Dyskinesia and mental health issues, and he has only one good eye. (Doc. 3 at 2). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and

if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff alleges he has attempted to secure his own counsel though he did not supply proof of his efforts. Plaintiff's effort to secure counsel is only part of the analysis. The Court also considers the complexity of the case and Plaintiff's competence to proceed. At this early juncture in the litigation, Plaintiff has drafted a succinct and adequate complaint, and he has supplied some relevant grievance documentation. The next step is service of process, which the Court will initiate, and then responsive pleadings. At this juncture, the Court finds that Plaintiff is competent to represent his own interests. Later in the case, Plaintiff may renew his request if he believes that the complexity of the matter exceeds his abilities. He should provide proof of his efforts to secure his own counsel with any future motion.

## Disposition

**IT IS HEREBY ORDERED THAT Claim 1** of the Complaint (Doc. 1) survives against Defendant Dr. Wynn; **Claim 2** survives against Wexford Health Sources, Inc.; **Claim 3** survives against Dr. Wynn and Wexford Health Sources, Inc.; and **Claim 4** survives against Dr. Wynn. By contrast, Plaintiff does not have a sufficient claim against Dr. DeBord, so Dr. DeBord is **DISMISSED** without prejudice, and the Clerk of Court is **DIRECTED** to **TERMINATE** Defendant DeBord from this case.

The Clerk of Court is **DIRECTED** to prepare for Defendants: Dr. Wynn and Wexford Health Sources, Inc.: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum

and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later

than 7 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** at this time without prejudice.

**IT IS SO ORDERED.**

Dated: December 6, 2023                    /s *David W. Dugan*
                                            _____
                                            DAVID W. DUGAN
                                            United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.