IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JAMES CHATMAN, B24332,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | ) Case No. 23-cv-3465-DWD |
| **DR. WYNN**[1] **and** | ) |
| **WEXFORD HEALTH SOURCES, INC.,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff James Chatman, an inmate of the Illinois Department of Corrections (IDOC) currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff alleged that Dr. Wynn, now identified as Zaw Win, M.D., was deliberately indifferent to his medical situation by prescribing medication that caused or worsened other medical issues and by refusing to discontinue it, and that Wexford contributed to this harm by maintaining a policy or practice of using medications to cut costs instead of referring individuals to medical specialists. Defendants filed a Motion for Summary Judgment (Docs. 26, 27) on the issue of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). After a volley of responses and

---

[1] The Clerk of Court is **DIRECTED** to update the docket sheet to reflect Dr. Wynn's name as Zaw Win, M.D.. (Doc. 20).

replies (Docs. 31, 32, 33, 34, 35), the matter is now ripe for consideration. For reasons explained, Defendants' Motion is granted, and this matter is dismissed without prejudice.

## BACKGROUND

Plaintiff initiated this lawsuit by filing a Complaint on October 22, 2023. (Doc. 1 at 16). In the Complaint, Plaintiff alleged that in February of 2022 he experienced kidney failure and other medical emergencies that required a week-long hospitalization. Prior to being hospitalized, he had complained to Dr. Win about side effects of mediations that were being used to treat Tardive Dyskinesia and he had asked to have the medications discontinued, but Dr. Win refused. He claims that Dr. Win's refusal was part of a bigger cost-cutting policy that Wexford maintains, which requires that an inmate be given medications before he can be seen by a specialist. He also alleges Wexford is at fault for distributing medication in packaging that does not explain the side effects. He claims he eventually learned that the medications he had complained about to Dr. Win were the cause of his February 2022 medical emergency. Upon initial review, the Court allowed the following claims to proceed:

Claim 1: Eighth Amendment deliberate indifference claim against Defendant Dr. Win for his continued use of Amantadine and Cogentin after Plaintiff complained of ill-effects;

Claim 2: *Monell* claim against Wexford Health Sources, Inc. for maintaining a cost cutting policy that required the use of medications over specialist visits, and a policy of failing to disclose side effects of medications;

Claim 3: Intentional infliction of emotional distress claim against Dr. Win and Wexford Health Sources, Inc. for knowingly proceeding with a harmful course of care;

  Claim 4:  Negligence claim against Dr. Win for his treatment decisions.

(Doc. 9).

  The parties undertook discovery on the exhaustion of administrative remedies, and in doing so they have identified two grievances relevant to the claims in this case. Initially, Plaintiff filed a narrative response (Doc. 31) to the Motion for Summary Judgment. The Defendants then filed a reply (Doc. 32) wherein they highlighted the fact that Plaintiff had not included a response to their statement of material facts. Plaintiff filed a "response" (Doc. 33) to their reply wherein he simply highlighted the Defendants' allegation that he did not file a proper response. On October 8, 2024, Plaintiff moved for leave to supplement his earlier responses. (Doc. 34). He included a properly formatted response to the Defendants' statement of material facts, and he also included new legal arguments in opposition to their Motion. Defendants oppose this late "sur-reply" brief. (Doc. 35).

## FINDINGS OF FACT

  On April 11, 2023, Plaintiff filed grievance 1172-04-23. (Doc. 27-1 at 11-12). In this grievance he described his February 2022 hospitalization and complained that he believed it was necessitated by medications he had previously asked to discontinue due to ill-effects. On April 25, 2023, the grievance officer responded indicating that medication recommendations from the hospital were being followed and that at a recent appointment, Plaintiff was noted as improving. (Doc. 27-1 at 10). The Chief Administrative Officer (CAO) concurred with the grievance officer's denial of the grievance on April 26, 2023. (*Id.*). On April 29, 2023, Plaintiff signed the denial form

indicating his intent to appeal. (*Id.*). The Administrative Review Board (ARB) received the appeal on May 3, 2023, and on November 8, 2023, it issued a denial of the grievance, finding the issue was appropriately addressed by the prison administration. (Doc. 27-1 at 9).

On September 18, 2023, Plaintiff submitted grievance 3148-09-23. (Doc. 27-1 at 3-4). In grievance 3148-09-23 he discussed interactions with Dr. Win concerning his prescription medications. He explained that he told Dr. Win that the medications prescribed were not helping with his Tardive Dyskinesia and he asked to be taken off of the medications. He explained that he learned from another medical provider in September of 2023 that the medications were not actually appropriate for the treatment of Tardive Dyskinesia. He had also been told during his February 2022 hospitalization that his medications caused his medical emergency. He expressed concerns in the grievance that he may still have ill effects in his brain or kidneys, but that he has not been examined via CAT scan or otherwise. He wrote, "PS—Wexford employee Dr. Wynn (Dr. Winn) employed cost cutting procedures which resulted in my injuries[.]" (Doc. 27-1 at 4). On September 21, 2023, a grievance officer responded and indicated Plaintiff was no longer taking any psychiatric medications and he was being seen "for his diagnosis." (Doc. 27-1 at 2). On September 22, 2023, the CAO concurred with the denial of the grievance, and on September 26, 2023, Plaintiff appealed. (Doc. 27-1 at 2). The appeal is stamped as received by the ARB on October 2, 2023. (Doc. 27-1 at 2).

A grievance log from the ARB indicated that grievance 1172-04-23 received a "hearing date" on November 8, 2023. (Doc. 27-1 at 1). By contrast, grievance 3148-09-23

had no hearing date on the ARB log. (Doc. 27-1 at 1). Plaintiff stated in his latest response from October of 2024 (Doc. 34) that he has not yet received a response from the ARB to grievance 3148-09-23. The Defendants indicated in their latest response (Doc. 35) that they subpoenaed records from the ARB on January 9, 2024, and got a response January 18, 2024, thus they do not have information about what has happened to any grievance pending on appeal after that date. (Doc. 35 at 5, n. 1).

## CONCLUSIONS OF LAW

A. Legal Standards

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (internal quotation marks and citation omitted). However, when the motion for summary judgment pertains to a prisoner's failure to exhaust administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). After hearing evidence, finding facts, and determining credibility, the court must decide whether to allow the claim to

proceed or to dismiss it for failure to exhaust. *Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The court is not required to conduct an evidentiary hearing if there is no genuine dispute of material fact, and the determination is purely legal. *See e.g.*, *Walker v. Harris*, 2021 WL 3287832 * 1 (S.D. Ill 2021); *Miller v. Wexford Health Source, Inc.*, 2017 WL 951399 *2 (S.D. Ill. 2017).

The Prison Litigation Reform Act (PLRA) provides that a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey*, 544 F.3d at 740. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024.

As an inmate in the IDOC, Plaintiff was required to follow the grievance process outlined in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, et seq. (2017). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. 20 ILL. ADMIN. CODE § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance. *Id.* If a grievance concerns protective custody, a plaintiff is allowed to file that grievance directly with the ARB. 20 ILL. ADMIN. CODE § 504.870(a)(1)

If the inmate is not satisfied with the CAO's response, he can file an appeal with the IDOC Director through the Administrative Review Board (ARB). 20 ILL. ADMIN. CODE § 504.850(a). The ARB must receive the appeal within 30 days of the date of the CAO's decision. *Id.* The inmate must attach copies of the responses from the grievance officer and CAO to his appeal. *Id.* If an inmate is appealing a grievance that the CAO determined to be of an emergency nature, then the ARB shall expedite processing of the appeal. 20 ILL. ADMIN. CODE § 504.850(f).

B. Analysis

As a preliminary matter, the Court grants Plaintiff's Motion to Supplement (Doc. 34), and it considered the assertions and arguments presented in that brief. Although Defendants are correct that sur-reply briefs are not permitted, this is a case brought by a pro se litigant and the intricacies of the summary judgment rules can be difficult for *pro se* litigants to follow. Here, it is obvious that Plaintiff initially did not understand the proper format for responding to the Motion (Doc. 27), but he later corrected his misunderstanding and filed a properly formatted response (Doc. 34-1). Ultimately, the re-formatting and addition of new arguments does not change the outcome, so it is not prejudicial to the Defendants for the Court to consider this late supplement.

It is undisputed that Plaintiff filed two grievances relevant to the allegations in this lawsuit. The first grievance was initiated on April 11, 2023, and received a final ruling from the ARB on November 8, 2023. (Doc. 27-1 at 9-12). The second grievance was initiated on September 18, 2023, it was appealed on September 26, 2023, and it was received by the ARB on October 2, 2023. (Doc. 27-1 at 2-4). This lawsuit was filed just 20

days later on October 22, 2023.  (Doc. 1 at 16).  The timing matters because a sue first exhaust later approach is not acceptable under controlling precedent. "By its plain terms, the PLRA requires prisoners to exhaust administrative remedies *before* filing suit; a 'sue first, exhaust later' approach is not acceptable."  *Chambers v. Sood*, 956 F.3d 979, 984-85 (7th Cir. 2005).  Under the *Chambers* rationale, Plaintiff filed this lawsuit before he had completed the exhaustion process for either of the relevant grievances.

In his response to the Defendants' Statement of Material Facts, Plaintiff admits that on November 8, 2023, the ARB denied his April 11, 2023, grievance (grievance 1172-04-23).  (Doc. 34-1 at 4).  He also admits that as of June 18, 2024 (when the Defendants filed their Motion for Summary Judgment), he had yet to receive a response from the ARB to his September 18, 2023, grievance (grievance 3148-09-23).  (Doc. 34-1 at 5).  Plaintiff argues in his response that the prison officials have made the grievance process unavailable by failing to adequately address the substance of his grievances and by failing to provide timely responses to his appeals with the ARB.

He points to language in the 20 Ill. Admin. Code § 504.850(d), which states the Director of the ARB shall render a decision on an appeal "within six months after receipt of the appealed grievance, when reasonable feasible under the circumstances."  He claims that it has now been a year since he appealed grievance 3148-09-23 and he is still waiting for a response.  He also argues the grievance process has been "opaque" and unavailable because the substantive responses to his grievances have not addressed the entirety of his concerns, focusing only on his Tardive Dyskinesia instead of also addressing his kidney and brain concerns.

Plaintiff's argument about the delayed response to his September 2023 grievance is not relevant to the exhaustion issue in this case because at the time he filed the complaint, he had not even waited a full month for the ARB to respond.  He transmitted his appeal to the ARB on September 26, 2023, and he filed this case on October 22, 2023.  This left hardly any time at all for the ARB to respond.  At the time he filed the complaint in October of 2023, he also had not yet waited six months for the ARB to respond to his April 2023 grievance.  Ultimately, the ARB responded to his April 2023 grievance six months and five days after receiving the appeal (they got the appeal May 3, 2023, and responded on November 8, 2023).  On these facts, Plaintiff sued before waiting to complete the exhaustion process.

While the ARB's responses might not have been ideally expedient, the Court is not persuaded that the ARB's responses were so slow that the process was unavailable.  The Court also notes that there is no indication Plaintiff did anything to learn the status of his pending ARB appeals prior to filing this lawsuit, which weighs against finding that the process was a dead end or had become unavailable.  *See e.g., Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019) (finding that an inmate who got no receipt or response to an appeal should have inquired as to the status of the appeal before filing a lawsuit); *Hill v. Bond*, 2015 WL 1166053 at * 4 (N.D. Ill. Mar. 11, 2015) (finding that an inmate did not exhaust remedies where he did not inquire with the ARB about the status of his grievance before filing suit).  Additionally, Plaintiff's arguments about his substantive allegations in the grievances in comparison to the substantive responses by the prison are not relevant until he has fully exhausted the grievance process, which he had not yet

accomplished when he filed this case. Thus, these arguments provide no basis to find that the grievance process was somehow opaque or unavailable. In sum, Plaintiff failed to exhaust his administrative remedies before filing this lawsuit, so the case must now be dismissed without prejudice.

At the outset, the Court exercised supplemental jurisdiction over Claims 3 and 4, concerning Defendants' alleged violations of state law. Now that Claims 1 and 2 are being dismissed without prejudice, the Court will relinquish supplemental jurisdiction over Claims 3 and 4. *See* 28 U.S.C. § 1367(c)(3); *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[T]he usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial.").

## DISPOSITION

The Clerk of Court is **DIRECTED** to update the docket sheet consistent with footnote 1—Dr. Wynn is Zaw Win, M.D.. Plaintiff's Motion to Supplement (Doc. 34) is **GRANTED**.

The Motion for Summary Judgment on the issue of exhaustion filed by all Defendants (Doc. 27) is **GRANTED**. Claims 1 and 2 against Defendants Win and Wexford Health Sources, Inc., are dismissed without prejudice for failure to exhaust administrative remedies. Claims 3 and 4 are dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3) because the Court now relinquishes supplemental jurisdiction over

these claims. The Clerk of Court is **DIRECTED** to enter judgment in Defendants favor and to close this case.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $605.00 filing fee irrespective of the outcome of the appeal. See FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur a "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

**IT IS SO ORDERED.**

Dated: October 22, 2024

_____
DAVID W. DUGAN
United States District Judge